**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 24-03013-01-CR-S-BP |
| | ) | |
| ALTON CLARK, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND OPINION (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION AND (2) DENYING DEFENDANT'S MOTION TO SUPPRESS**

Defendant has been charged with one count of being a felon in possession of ammunition. He filed a Motion to Suppress, (Doc. 23), contending that the search of his vehicle violated the Fourth Amendment. The Honorable David P. Rush, United States Magistrate Judge for this District, held a hearing on July 22, 2024, and thereafter issued a Report recommending that the Motion to Suppress be denied. (Doc. 35.) Defendant has filed objections to Judge Rush's Report and Recommendation ("the Report").

The Court has conducted a de novo review of the facts and law as required by 28 U.S.C. § 636(b)(1). In particular, the Court has reviewed the parties' submissions before the hearing, the transcript and exhibits from the hearing, and Defendant's objections. Having conducted this review, the Court adopts the Report as the Order of the Court and denies the Motion to Suppress. The Court's discussion is intended to augment, not supplant, the Report's recommended findings and conclusions.

**I. BACKGROUND**

In 2023, Corporal Thomas Kelly of the Springfield Police Department ("SPD") was conducting a narcotics investigation involving Shiloh Owens, and as part of that investigation he

conducted surveillance and gathered information about a house connected to Owens located on North Broadway Avenue in Springfield, Missouri.

On August 9, 2023, Kelly applied for a warrant. The application and affidavit (the "Application") included the following information gleaned from his investigation:

> In early 2023, I received information that Shiloh OWENS was selling large amounts of methamphetamine. I learned OWENS was living at 2743 N. Broadway Avenue and conducted surveillance at this location on numerous occasions where I have seen OWENS freely come and go. *I observed at least one exterior surveillance camera and regularly observed vehicles arrive at the location and only stay for short periods before leaving, behavior indicative of drug transactions.* I further received information from other officers being told about drug trafficking by OWENS at this address. Further research also revealed AL (a documented drug user) as living [sic] at 2743 N. Broadway Avenue.
>
> Springfield Police Detective E. Nicholson informed me on 08/08/2023 that within the previous five days, a reliable and confidential source (C/S) told him he/she had been inside 2743 N. Broadway Avenue and witnessed a male he/she identified as OWENS in possession of a large amount of methamphetamine. The C/S must remain confidential to protect his/her safety and ongoing investigations. This C/S has been proven reliable in the past and has provided information that Detective E. Nicholson confirmed as reliable from follow-up investigations and surveillance.

(Doc. 23-1, p. 3 (emphasis supplied).) The Application was submitted to a Judge of the Circuit Court of Greene County, Missouri, who issued a search warrant. The warrant authorized a search of the house as well as "all individuals present at the execution of th[e] warrant . . . and any vehicles associated with any such person which are either on the search situs or located immediately adjacent thereto." (Doc. 23-2, p. 2.)

After obtaining the warrant, Kelly met with detectives and members of the Special Response Team to discuss the warrant's execution. During that meeting, it was discussed that individuals found on the premises would be detained and searched. (Doc. 24, pp. 5, 8-9, 19.)

The warrant was executed at 8:30 p.m. the evening it was issued. (Doc. 34, p. 10.) At approximately 9:15 p.m., while the search was still being conducted, Defendant drove his Jeep onto the driveway. (Doc. 34, pp. 10-11, 18, 24.) Defendant exited the car; it is not clear from the Record whether he did so on his own or at the direction of law enforcement officers at the scene. Regardless, he was detained; Detective Eric Luebbert (also of the SPD) then searched the Jeep and found methamphetamine and a loaded handgun magazine. (Doc. 34, p. 18.) Luebbert announced his discovery to other officers at the scene and stated he was going to continue searching to see if a firearm was also present in the Jeep. (Doc. 34, pp. 19-20.) Defendant apparently overheard; he responded that there was only a magazine, and no firearm, in the vehicle. (Doc. 34, p. 20.) Later, Defendant told Luebbert that it was not illegal for him to possess the magazine. (Doc. 34, p. 21.)

Additional facts will be discussed as necessary in Part II of this Order.

## II. DISCUSSION

Defendant argues the search of his Jeep was unlawful, so the magazine and his statements must be suppressed. The Report recommends that the Court conclude that the evidence not be suppressed because (1) the warrant's authorization to search "individuals present" and "vehicles associated with any such person" was supported by probable cause and (2) even if it was not, the officers acted in good faith reliance on the warrant. Defendant objects to these aspects of the Report.[1] Specifically, while he does not dispute that the search of his Jeep was authorized by the warrant, he contends (1) the warrant's extension to him was not supported by probable cause and (2) the officers did not act in good faith reliance on the warrant.

---

[1] In opposing Defendant's Motion, the Government presented additional arguments to support the officers' actions. (*See* Doc. 28, pp. 9-14.) However, the Report does not recommend that the Court rely on these theories, and the Government has not presented them in response to Defendant's objection. The Court expresses no opinion on these alternative theories justifying denial of Defendant's Motion to Suppress.

"Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. DeFoggi*, 839 F.3d 701, 706 (8th Cir. 2016) (quotation omitted). To determine whether this standard is met, courts analyze the totality of the circumstances, utilize common sense, and may make reasonable inferences. *Id.* Further, "probable cause is determined based on the information before the issuing judicial officer[,]" and courts afford "great deference to the issuing judge's determination that the affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (cleaned up).

Here, Defendant argues neither the Application nor the warrant specifically referenced him and, therefore, law enforcement had no basis to search him. Indeed, Kelly testified he had no knowledge of Defendant prior to the search. (Doc. 34, p. 8.) However, the warrant's extension to other persons on the premises does not automatically violate the Fourth Amendment simply because it (and the supporting Application) did not refer to Defendant by name. While the Supreme Court and the Eighth Circuit have not specifically stated so, all other courts to address the issue (or, at least, all those the Court could identify as addressing the issue) have held that "a warrant may authorize the search of all persons present if there is probable cause to believe that a premises is dedicated to criminal activity," or that there is probable cause to otherwise believe all persons on the premises are involved in criminal activity. *United States v. Abbott*, 574 F.3d 203, 212 (3d Cir. 2009); *see also United States v. Carter*, 520 Fed. App'x 377, 381 (6th Cir. 2013); *United States v. Hicks*, 395 Fed. App'x 80, 81 (4th Cir. 2010) (describing this as the majority view); *United States v. Shields*, 173 F.3d 880, at \*2 (10th Cir. 1999) (describing this as "the prevailing view").

The cases Defendant relies on to argue such "all persons" warrants are unconstitutional are distinguishable. He first points to the Supreme Court's decision in *Ybarra v. Illinois*. There, agents

from the Illinois Bureau of Investigation obtained a warrant based on information that a specific

bartender possessed controlled substances and was selling them while working in the bar.  When

they executed the warrant, the agents relied on an Illinois *statute* that authorized officers to search

any persons found on the premises being searched and searched the customers who happened to

be in the bar at the time.  444 U.S. 85, 88 (1979).  One of the customers searched had a packet of

heroin in his pocket, and he was charged with possessing a controlled substance.  The Supreme

Court held that while the agents "possessed a warrant based on probable cause to search the tavern

in which [the customer] happened to be at the time the warrant was executed," the customer's

"mere [proximity] to others independently suspected of criminal activity does not, without more,

give rise to probable cause to search that person." *Id*. at 91.  The Court further explained that the

requirement of probable cause "cannot be undercut or avoided by simply pointing to the fact that

coincidentally there exists probable cause to search or seize another or to search the premises

where the person may happen to be." *Id*.   In contrast to this case, the affidavit supporting the

warrant in *Ybarra* did not suggest there was probable cause to search patrons in the bar, and the

judge who issued the warrant did not find probable cause to do so existed.  *Ybarra* thus does not

address whether or how to establish probable cause to search persons present in a location devoted

to criminal activity.[2]

The Defendant next relies on *United States v. Pennington*; the warrant in that case

authorized a search for drugs, but the places to be searched did not specifically include the property

owner's vehicles.   287 F.3d 739, 743 (8th Cir. 2002).  Nonetheless, the officers searched the

property owner's vehicles.  *Id*. at 744.  The Eighth Circuit upheld the search, explaining that

---

[2] The Eleventh Circuit has observed that justifying an all persons warrant is more difficult in the context of a business establishment open to the public (such as in *Ybarra*) than it is for non-public places.  *United States v. Fernandez Martinez*, 317 F. App'x 929, 937 (11th Cir. 2009).

"[t]hough these vehicles were not specifically listed in the warrant as places to be searched, a vehicle found on a premises (except, for example, the vehicle of a guest or other caller) is considered to be included within the scope of a warrant authorizing a search of that premises." *Id*. at 745 (quotation omitted). Defendant argues the warrant here similarly could not justify a search of his Jeep because he was only a guest or a visitor at the property being searched. However, the warrant in *Pennington* did not specifically authorize the search of other people's vehicles. As with *Ybarra*, *Pennington* is distinguishable because in this case the Judge issuing the warrant found probable cause to search vehicles belonging to guests and visitors and specifically authorized the officers to search them.

Thus, a warrant can constitutionally authorize the search all persons at a location if there is probable cause to believe all such persons are engaged in criminal activity. Here, in addition to identifying a surveillance camera outside the home, the Application (1) described people arriving and leaving in a manner consistent with regular and repeated drug transactions over a period of several days and (2) provided information that Owens had a large quantity of methamphetamine in the house. This information suggests all persons on the premises were either buying or selling drugs.

Even if the Application did not establish probable cause to search all persons on the premises, the Court concludes the good faith exception applies. This exception applies "'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even if the warrant is subsequently invalidated." *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013) (quoting *United States v. Leon*, 468 U.S. 897, 920-21 (1984)).

6

Defendant argues that the good faith exception does not apply because the Application was obviously deficient, in that it did not specifically mention him or his vehicle. But as explained above, the failure to specify each and every person who might be found on the premises is not automatically fatal because an appropriate showing of probable case can support such a warrant. Defendant also compares this case to *United States v. Swift*, which (like this case) involved a warrant authorizing the search of "any and all vehicles and persons present at the scene." 720 F. Supp. 2d 1048, 1051 (E.D. Ark. 2010). The district court in *Swift* acknowledged this provision could be justified if the supporting affidavit established probable cause implicating all persons and vehicles at the scene. *Id*. at 1057. However, it appears the supporting affidavit in *Swift* provided less information than the Application in this case, in that it only conveyed information from a confidential informant to the effect that the person living at the residence had sold methamphetamine and marijuana in the past. *Id*. at 1054. In contrast, the Application states that Kelly observed at least one exterior surveillance camera and observed vehicles arriving regularly and staying for short periods of time such that issuing Judge could (1) infer the place to be searched operated as a drug house and (2) find probable cause to believe any person found there was either buying or selling drugs. The Court thus concludes the Application in *this* case was not so deficient in establishing probable cause that the good faith exception cannot be applied.[3]

---

[3] Defendant's arguments for suppressing his statements depend on concluding the search was unlawful. The Court's ruling with respect to the search resolves these arguments as well.

## III.  CONCLUSION

The Court adopts the Report and Recommendation, (Doc. 35), augmented by the discussion

above.  Defendant's Motion to Suppress, (Doc. 23), is **DENIED**.

**IT IS SO ORDERED.**


/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: November 1, 2024            UNITED STATES DISTRICT COURT